1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10  AARON W. TROTTER,

11              Petitioner,

12        v.

13  CHERYL STRANGE,

14              Respondent.

CASE NO. 3:21-cv-05612-DGE-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  December 24, 2021

15

16        The District Court has referred this petition for a writ of habeas corpus to Chief United

17  States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. §

18  636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the

19  petition pursuant to 28 U.S.C. § 2254 and is represented by counsel.

20        Petitioner is seeking federal habeas relief from a conviction of second degree assault with

21  a deadly weapon. The State of Washington initially charged petitioner with two counts of assault

22  in the second degree. Both counts arise out of a single incident involving petitioner's alleged

23  assault on a single victim. Count I was based on assault by strangulation and count II was based

24

REPORT AND RECOMMENDATION - 1

on assault with a deadly weapon. During the first trial, the jury found petitioner not guilty as to count I and informed the trial court that it hung as to count II. The trial court declared a mistrial as to count II. The state retried petitioner on the assault with a deadly weapon charge and a jury found him guilty.

Petitioner argues that the state violated double jeopardy principles by retrying him for count II. Specifically, petitioner argues that, because the jury in the first trial acquitted him on assault by strangulation, the state could not retry him for assault with a deadly weapon—or any other theory of assault based on the same incident. Petitioner also argues that the jury in the first trial impliedly acquitted on count II because it left the verdict form blank as to that count.

The state court ruled that the two counts were alternative means of committing the offense of second degree assault, which meant that an acquittal on one count did not preclude retrial on the count that the jury deadlocked on. The state court's ruling was not contrary to or an unreasonable application of clearly established federal law.

The state court also ruled that the jury did not impliedly acquit petitioner on count II because the jury did not remain silent as to that count. The jury informed the trial court that it could not reach a decision as to that count and based on that statement the trial court declared a mistrial. Again, the state court's rejection of that argument was not contrary to or an unreasonable application of clearly established federal law.

Therefore, this Court recommends that the petition be dismissed.

## BACKGROUND

Petitioner is in custody after he was convicted in Cowlitz County Superior Court of second degree assault with a deadly weapon. Dkt. 8-1, at 2–13. He was sentenced to 39 months in prison and 18 months community custody. *Id.* Petitioner appealed his conviction to the

1    Washington Court of Appeals. *Id.* at 40. The Washington Court of Appeals transferred the appeal

2    from Division II to Division I, which issued a decision affirming the conviction. *See id.* at 90–96.

3    Petitioner then sought review by the Washington Supreme Court. *Id.* at 98. The Washington

4    Supreme Court denied review on January 3, 2018. *Id.* at 105.

5         Petitioner then filed a post-conviction motion in the Cowlitz County Superior Court. *Id.*

6    at 109. The Superior Court transferred the motion to the Washington Court of Appeals for

7    consideration as a personal restraint petition. *Id.* at 118. On October 27, 2020, the Washington

8    Court of Appeals rejected petitioner's claims and dismissed the personal restraint petition. *Id.* at

9    15–38. Petitioner sought review by the Washington Supreme Court, which denied review and

10   agreed with the Washington Court of Appeals. *See id.* at 289–391. Petitioner sought to modify

11   the decision, but the Washington Supreme Court denied his request. *Id.* at 393, 419. On May 21,

12   2021, the Washington Court of Appeals issued a certificate of finality. *Id.* at 421.

13        In August 2021, petitioner filed a petition for writ of habeas corpus claiming that the state

14   violated his Fifth Amendment right to be free from double jeopardy and that the state was barred

15   by collateral estoppel from trying him again for the assault. Dkts. 1–2.

16        As summarized by the Court of Appeals, "[o]n May 31, 2015, Shantell Zimmerman went

17   to [petitioner]'s house for a barbeque. [Petitioner] punched Zimmerman several times, put his

18   arm around Zimmerman's neck, and hit Zimmerman on the back and the head with the butt of a

19   rifle." Dkt. 8-1, at 16. On June 9, 2015, the State of Washington charged petitioner with two

20   counts of second degree assault under RCW 9A.36.021. *Id.* at 16. Count I was for second degree

21   assault by strangulation and count II was for second degree assault with a deadly weapon. *Id.*;

22   *see* RCW 9A.36.021(1)(g) and (c).

23

24

1        Along with jury instructions specific to each count, the trial court provided the jury with a

2  jury instruction stating the following: "A separate crime is charged in each count. You must

3  decide each count separately. Your verdict on one count should not control your verdict on the

4  other count." Dkt. 8-1, at 433.

5        During deliberations, the jury informed the trial court that "they [had] a verdict as to

6  Count I, but they in their terms hung as to Count II." Dkt. 8-1, at 784. The trial court called the

7  jury into the courtroom and stated the following:

8           I've called you back into the courtroom to find out whether you have a reasonable
probability of reaching a verdict. First, a word of caution. Because you are in the
9           process of deliberation, it is essential that you give no indication about how the
deliberations are going. You must not make any remark here in the courtroom that
10          may adversely affect the rights of either party or may in any way disclose your
opinion of this case or the opinions of other members of the jury.
11          ….
I'm going to ask your presiding juror if there's a reasonable probability of the jury
12          reaching a verdict within a reasonable time. The presiding juror must restrict his
answer to yes or no when I ask this question and must not say anything else.
13          ….
So what I'm going to ask just focusing on Count II. Is there a reasonable probability
14          of the jury reaching a verdict within a reasonable time as to Count II?

15  Dkt. 8-1, at 20–21, 784–85. The presiding juror answered "No." *Id.*

16        The trial court then took the jury's verdict. *Id.* at 786. As to count I, the jury found

17  petitioner not guilty. *Id.* As to count II, "based on the indication of the jury not being able to

18  reach a verdict," the trial court declared a mistrial. *Id.*

19        The state tried petitioner a second time on the second degree assault with a firearm

20  charge. However, the second trial ended in a mistrial after a lay witness gave expert testimony.

21  Dkt. 8-1, at 926. The state tried petitioner a third time on the same second degree assault with a

22  firearm charge and the jury found him guilty. Dkt. 8-1, at 1187.

23  ///

24

# DISCUSSION

Respondent concedes that petitioner properly exhausted his state court remedies and that he filed his federal petition within the statute of limitations. Dkt. 7, at 9. Therefore, the Court addresses the merits of petitioner's arguments.

## I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The first exception, § 2254(d)(1), allows habeas relief on the basis that an adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court

1   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

2   where it should not apply or unreasonably refuses to extend that principle to a new context where

3   it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

4   U.S. at 407).

5        The second § 2254 exception, § 2254(d)(2), provides for habeas relief if the adjudication

6   "resulted in a decision that was based on an unreasonable determination of the facts in light of

7   the evidence presented in the State court proceeding." Federal habeas courts must presume the

8   correctness of state courts' factual findings unless applicants rebut this presumption with "clear

9   and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under

10  §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on

11  the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

12       **II.    Double Jeopardy**

13       Petitioner argues that the state was precluded from retrying him on count II after he was

14  acquitted on count I because the two counts of assault fall within the same "course of conduct."

15  Dkt. 2, at 11. In other words, according to petitioner, "the acquittal on Count I therefore served

16  as an acquittal on the entire incident." *Id.* at 14.

17       The double jeopardy clause of the Fifth Amendment states that no person shall "be

18  subject for the same offense to be twice put in jeopardy of life or limb." *Hudson v. United States*,

19  522 U.S. 93, 98 (1997). The Double Jeopardy Clause protects against three distinct abuses: (1) a

20  second prosecution for the same offense after conviction; (2) a second prosecution for the same

21  offense after acquittal; and (3) multiple punishments for the same offense. *Schiro v. Farley*, 510

22  U.S. 222, 229 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

23

24

Here, the state law under which petitioner was charged, RCW 9A.36.021, provides for the criminal offense of assault in the second degree and it contains seven subsections describing how the offense can be committed. *See* RCW 9A.36.021(1)(a)–(g). The Ninth Circuit has stated that "section 9A.36.021(1) lists alternative means of proving a single crime, not alternative elements of separate crimes." *United States v. Robinson*, 869 F.3d 933, 941 (9th Cir. 2017) (citing *State v. Fuller*, 185 Wn.2d 30, 35 (2016)). For count I, petitioner was charged under RCW 9A.36.021(1)(g), which covers assaults by strangulation. For count II, petitioner was charged under RCW 9A.36.021(1)(c), which covers assaults with a deadly weapon.

Petitioner argues that the Washington Supreme Court Commissioner ignored the issue of whether the acquittal on count I constituted an acquittal on the entire assault because assault is a course of conduct crime. Dkt. 2, at 14. According to petitioner, "the refusal to address the federal constitutional issue was thus contrary to or an unreasonable application of Supreme Court law." *Id.* at 15. However, the Commissioner did not ignore this issue. Citing to *State v. Fuller*, 185 Wn.2d 30 (2016), the Commissioner ruled that the state was not precluded from retrying petitioner on the deadlocked count. Dkt. 8-1, at 390.

In *Fuller*, the defendant was similarly charged with two counts of assault in the second degree under RCW 9A.36.021. 185 Wn.2d at 32. The first count charged assault based on the use of a deadly weapon and the second count charged assault based on recklessly inflicting substantial bodily harm. *Id.* Both charges were based on the allegation that the defendant struck someone with a baseball bat. *Id.* The jury received instructions from the trial court that "a separate crime was charged in each count, and that its verdict on one count did not control the verdict on any other count." *Id.* at 32–33. The jury acquitted the defendant on the charge of assault based on recklessly inflicting substantial bodily harm but was unable to reach a verdict on

1    the charge of assault based on the use of a deadly weapon. *Id.* at 33. The trial court declared a

2    mistrial as to the latter and the state sought to retry the defendant on that charge, which the

3    defendant moved to dismiss based on double jeopardy grounds. *Id.*

4         On appeal, the Washington Supreme Court held that:

5         [W]hen the State charges alternative means of committing an offense in separate
          counts and the jury acquits on one count but deadlocks on the other, the State may

6         retry the defendant on the count on which the jury was declared hung. Retrial on
          that count does not violate the prohibition against double jeopardy because

7         jeopardy never terminated as to that count or as to the overall offense.

8    *Id.* at 42.

9         Here, also like *Fuller*, the jury was instructed that "[a] separate crime is charged in each

10   count" and that their "verdict on one count should not control [their] verdict on the other count."

11   Dkt. 8-1, at 433. The jury also acquitted petitioner on count I but was unable to reach a verdict

12   on count II. *Id.* at 784–85. Given the similarities, it was not unreasonable for the state court to

13   apply the same reasoning as it did in *Fuller*.

14        Petitioner does not argue that *Fuller* is contrary to clearly established federal law, but

15   instead argues that *Fuller* is distinguishable because it is "akin to [a] situation where the jury is

16   instructed on a lesser-included offense" and that the state court should have applied the reasoning

17   in another Washington Supreme Court case. Dkt. 9, at 5.

18        Petitioner's argument is misplaced on both points.

19        First, *Fuller* did not treat the first count as a lesser-included offense, but rather explicitly

20   stated that it was an alternative means of committing the same offense of assault in the second

21   degree. *See Fuller*, 185 Wn.2d at 42. This view of the statute has been taken by the Ninth

22   Circuit. *See Robinson*, 869 F.3d at 941.

23

24

1   Second, according to petitioner, instead of relying on *Fuller*, the state court should have

2   relied on its decision in *State v. Villanueva-Gonzalez*, 180 Wn.2d 975 (2014). Dkt. 9, at 5.

3   However, *Villanueva-Gonzalez* is distinguishable from petitioner's situation because that case

4   dealt with a situation in which the defendant was *convicted* on two counts of assault. 180 Wn.2d

5   at 979. There, the defendant was also charged with two counts of second degree assault under

6   RCW 9A.36.021. *Id.* One count was for assault by strangulation and the second count was for

7   assault by recklessly inflicting substantial bodily harm. *Id.* For count one, the jury convicted the

8   defendant of the lesser included charge of fourth degree assault, and convicted the defendant for

9   second degree assault on the second count. *Id.* The Washington Supreme Court held that the two

10  assault convictions violated double jeopardy. *Id.* at 986. However, the *Villanueva-Gonzalez* court

11  stated that it was specifically grappling with the principle that a person cannot receive multiple

12  *punishments* for the same offense. *Id.* at 980.

13  Here, petitioner was convicted of—and punished for—only one count of assault.

14  Therefore, he did not run the risk of multiple punishments for the same offense as the defendant

15  in *Villanueva-Gonzalez*. 180 Wn.2d at 980; *see also Schiro*, 510 U.S. at 229. In fact, the

16  Washington Supreme Court has made clear that "a defendant charged and tried under multiple

17  statutory alternatives experiences the same jeopardy as one charged and tried on a single theory.

18  The defendant is in jeopardy of a single conviction and subject to a single punishment, whether

19  the State charges a single alternative or several." *Fuller*, 185 Wn.2d at 35 (citing *State v. Wright*,

20  165 Wn.2d 783, 801 (2009)).

21  In conclusion, petitioner has not pointed this Court to anything that would suggest that

22  applying *Fuller* is contrary to or an unreasonable application of clearly established federal law.

23  Therefore, the Court recommends denying the petition on this ground.

24

1

III.    **Implied Acquittal and Collateral Estoppel**

2

Petitioner also argued that the state was precluded from retrying him on count II because

3

the jury "impliedly acquitted him of that charge on the first trial" when it left the verdict form

4

blank for that count. Dkt. 2, at 15. According to petitioner, "[t]he Washington Supreme Court's

5

decision rests upon a fundamental misunderstanding of Petitioner's claim" because the

6

Commissioner framed petitioner's issue as whether the acquittal on the assault by strangulation

7

count acted as an implied acquittal on the assault with firearm count instead of whether "the

8

jury's silence on the firearm assault during the first trial constituted an implied acquittal barring

9

retrial on that same charge." Dkt. 9, at 6–7 (citing Dkt. 8-1, at 390).

10

The Fifth Amendment's Double Jeopardy Clause prohibits retrial after an acquittal,

11

whether express or implied by jury silence. *See Green v. United States*, 355 U.S. 184, 190

12

(1957). An implied acquittal occurs when a jury returns a guilty verdict as to a lesser included or

13

lesser alternate charge, but remains silent as to other charges, without announcing any signs of

14

hopeless deadlock. *See id.* at 191, 194.

15

In contrast to an implied acquittal, retrial is permitted where there is a mistrial declared

16

due to the "manifest necessity" presented by a hung jury. *See United States v. Perez*, 22 U.S.

17

579, 580 (1824). A hung jury occurs when there is an irreconcilable disagreement among the

18

jury members. A "high degree" of necessity is required to establish a mistrial due to the hopeless

19

deadlock of jury members. *See Arizona v. Washington*, 434 U.S. 497, 506 (1978). The record

20

should reflect that the jury is "genuinely deadlocked." *Richardson v. United States*, 468 U.S.

21

317, 324–25 (1984); *see also Selvester v. United States*, 170 U.S. 262, 270 (1898) ("But if, on

22

the other hand, after the case had been submitted to the jury they reported their inability to agree,

23

24

1    and the court made record of it and discharged them, such discharge would not be equivalent to

2    an acquittal, since it would not bar the further prosecution.").

3    "The trial judge's decision to declare a mistrial when he considers the jury deadlocked is

4    therefore accorded great deference by a reviewing court." *Arizona*, 434 U.S. at, 510. That is

5    because "if he discharges the jury when further deliberations may produce a fair verdict, the

6    defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'"

7    *Id.* at 509. On the other hand, "if he fails to discharge a jury which is unable to reach a verdict

8    after protracted and exhausting deliberations, there exists a significant risk that a verdict may

9    result from pressures inherent in the situation rather than the considered judgment of all the

10   jurors." *Id.*

11   Here, contrary to petitioner's assertion, the Commissioner did properly frame petitioner's

12   issue, albeit in a footnote. *See* Dkt. 8-1, at 390 n.1. The Commissioner stated the following:

13       Mr. Trotter also argues that the first jury left the verdict form blank for count II,
         implying that it intended its acquittal on count I to also apply to count II. But as the

14       Court of Appeals explained, the record shows that the jury told the trial court that
         it had deadlocked on count II and could not reach a unanimous verdict.

15   *Id.*

16   Indeed, a review of the record reveals that the jury informed the trial court that it could

17   not reach an agreement as to count II. *See* Dkt. 8-1, at 783. The trial court then brought the jury

18   into the courtroom and asked whether there was a "reasonable probability of the jury reaching a

19   verdict within a reasonable time as to Count II." *Id.* at 785. The jury said no. *Id.* The trial court

20   then proceeded to take the verdict as to count I and declared a mistrial as to count II. *Id.* at 786.

21   Despite these sequence of events at the first trial, petitioner argues that the jury never

22   formally deadlocked because the deadlock is not apparent from the jury instructions and verdict

23   forms, and that the judge improperly questioned the jury. Dkt. 2, at 19. Under petitioner's theory,

24

1    there was simply no way for the jury to deadlock. The jury could not indicate a deadlock on the

2    verdict form because there was no such option on the form. Therefore, according to petitioner,

3    the jury could not inform the trial court about its inability to agree because doing so would result

4    in an inquiry into the thought process of the jury. *See* Dkt. 15–19. However, according to the

5    Ninth Circuit, "there can be no serious dispute as to whether the jury was genuinely deadlocked

6    [when] the jury notifie[s] the [trial] court as such on several occasions. A district court need not,

7    and indeed should not, order continued deliberations once it becomes apparent that hopeless

8    deadlock exists." *United States v. Jefferson*, 566 F.3d 928, 936 (9th Cir. 2009).

9         Petitioner also relies on *Green v. United States*, 355 U.S. 184 (1957) to support his

10    position that the jury's "silence" was an implied acquittal. *See* Dkt. 2, at 16. In *Green*, the jury

11    convicted the defendant second degree murder but remained silent as to the greater charge of

12    first degree murder. *Id.* at 186. The court of appeals reversed on the second degree murder

13    conviction and remanded the case for a new trial. *Id.* On remand, the state retried the defendant

14    for first degree murder and a jury found him guilty. *Id.* The United States Supreme Court held

15    that trying the defendant a second time for first degree murder put him in double jeopardy

16    because the first jury "was given a full opportunity to return a verdict and no extraordinary

17    circumstances appeared which prevented it from doing so." *Id.* at 191.

18         Petitioner's reliance on *Green* fails for two reasons. First, the jury in the first trial was not

19    silent as to count II because the jury explicitly told the trial court that it could not come to an

20    agreement as to that count and that further deliberation would not be useful. *See* Dkt. 8-1, at 783,

21    785. In this context, it would have been unreasonable for the state court to adopt petitioner's

22    argument that the jury was silent.

23

24

1    Second, *Green* does not apply in this case because *Green* involves a situation in which

2    the jury convicted on a lesser-included offense and was silent on a greater offense. 355 U.S. at

3    185–86. Here, the jury was tasked with considering two alternative means of assault in the

4    second degree and explicitly informed the trial court that it could not decide on one. Dkt. 8-1, at

5    783, 785. Therefore, this situation is distinguishable from *Green* and petitioner has not shown

6    that the state court was unreasonable in its ruling.

7    Finally, petitioner argues that "[co]llateral estoppel precluded the State from prosecuting

8    him again for a second degree assault because the ultimate issue was the same in both trials—

9    whether or not [p]etitioner assaulted his girlfriend." Dkt. 2, at 20. This argument is related to

10   petitioner's first ground, which the Court already addressed. *See supra*, section II. Again, the

11   issue of whether petitioner committed an assault with a deadly weapon was not resolved by the

12   first jury. Because the second degree assault offense in Washington provides for seven ways for

13   the crime to be committed, the jury's verdict on one does not preclude the other. *See Fuller*, 185

14   Wn.2d at 42. For example, it could be that the jury in the first trial did not find enough evidence

15   that petitioner committed the act of strangulation, but that would not preclude a finding that he

16   committed an assault with a deadly weapon.

17   Therefore, petitioner has not shown that the state court's ruling was contrary to or an

18   unreasonable application of clearly established federal law.

### EVIDENTIARY HEARING

20   Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §

21   2254(e)(2) (2009), a hearing will only occur if a habeas applicant has failed to develop the

22   factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a

23   new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

24

1  Court that was previously unavailable, or if there is (2) a factual predicate that could not have

2  been previously discovered through the exercise of due diligence; and (B) the facts underlying

3  the claim would be sufficient to establish by clear and convincing evidence that but for

4  constitutional error, no reasonable fact finder would have found the applicant guilty of the

5  underlying offense. 28 U.S.C. § 2254(e) (2) (2009).

6          Petitioner relies on established constitutional law, the factual predicates were available at

7  trial, and the facts do not establish that no reasonable fact finder would have found the applicant

8  guilty. Accordingly, the Court concludes that an evidentiary hearing is not necessary to decide

9  this case.

10                          **CERTIFICATE OF APPEALABILITY**

11         Petitioners seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

12  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

13  (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner

14  has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

15  2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could

16  disagree with the district court's resolution of his constitutional claims or that jurists could

17  conclude the issues presented are adequate to deserve encouragement to proceed further."

18  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

19  (2000)). Pursuant to this standard, this Court concludes that petitioner **is not** entitled to a

20  certificate of appealability with respect to this petition.

21                                  **CONCLUSION**

22         The habeas petition (Dkt. 1) should be denied, the action should be dismissed with

23  prejudice, and the case should be closed. No certificate of appealability should issue.

24

1    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3    6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

5    objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

6    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

7    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8    December 24, 2021, as noted in the caption.

9    Dated this 6th day of December, 2021.

10

11    J. Richard Creatura

12    Chief United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24